Barbera, C.J.,
dissenting in part.
I dissent, in part, from the judgment of the Court. I am in full agreement with the Court’s holding that Petitioner Spencer is entitled to a reversal without a retrial of the conviction of attempted second degree murder because the evidence presented to the jury was legally insufficient to establish that he possessed the specific intent to kill that is required for conviction of that crime. I part company, however, with the Court’s holding that the trial judge was clearly erroneous in finding that Spencer’s trial counsel had relied on the race of three jurors in exercising peremptory challenges to strike them from the jury.
I would affirm the reasoning and holding of the majority of the three-judge panel of the Court of Special Appeals, who in an unreported decision concluded that the trial judge was not clearly erroneous in finding that Petitioner Spencer’s trial counsel had violated the dictates of Batson v. Kentucky, 476 *573 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Indeed, I have no quarrel with any part of the analysis of this issue by the majority of the three judges who decided this case for the Court of Special Appeals.
Finally, I note the attention that the federal courts and our sister state courts are giving, in light of Rivera v. Illinois, 556 U.S. 148, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009), to the appropriate remedy for trial court errors like the one the majority of my colleagues imagine occurred in the present case.
I.
The trial court was not clearly erroneous in finding that defense counsel had violated Batson.
“Batson and its progeny instruct that the exercise of peremptory challenges on the basis of race, gender, or ethnicity violates the Equal Protection Clause of the Fourteenth Amendment.” Ray-Simmons v. State, 446 Md. 429, 435, 132 A.3d 275 (2016). The Supreme Court set forth a three-step process to assist the trial judge in deciding a claim that a party to the case exercised one or more peremptory challenges to eliminate prospective jurors based on race, gender, or ethnicity. I need not repeat the now-familiar three-step process, as it is fully described in the majority opinion. See Maj. Op. at 551-53, 149 A.3d at 621-23. The dispute centers on the third step of the three-step process. It is at that step that the party challenging opposing counsel’s exercise of peremptory strikes must carry the burden of proving to the trial judge’s satisfaction that the facially neutral explanations given by the striking party are merely pretextual. Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). At that step, “the trial court must evaluate not only whether the [striking party’s] demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the [striking party].” Ray-Simmons, 446 Md. at 437, 132 A.3d 275 (alterations in original) (citation omitted). *574 We made clear long ago that the factors a trial judge may use to evaluate the legitimacy of the striking party’s explanations include “a past pattern of discriminatory practices” by that attorney. See Stanley v. State, 313 Md. 50, 78-79, 542 A.2d 1267 (1988) (citation omitted).
In the unreported opinion of the three-judge panel of the Court of Special Appeals, the Honorable Stuart R. Berger, writing on the Batson issue for himself and the Honorable Raymond G. Thieme, Jr. (Retired, Specially Assigned), summarized what occurred at step three of the process. I could not improve on either the summary of the trial record or the panel majority’s legal analysis, so I shall quote extensively from the opinion, beginning with the summary of the relevant facts:
In this case, the defense exercised six peremptory strikes early in the selection process, and the State objected, noting that four of the strikes had been applied to white males, some of whom had given no affirmative answers to any voir dire questions. The court made an express finding that there was a “pattern of striking white mostly male jurors, even jurors who have not answered a question.” The court then moved to the second Batson step, asking defense counsel to offer his rationale for the use of his peremptory strikes. Defense counsel did so, claiming that he routinely struck anyone who was a farmer, anyone who was a “mechanic,” anyone who was self-employed, and anyone who was “older.” The court expressed some skepticism of the genuineness of counsel’s explanations. Indeed, the State noted that the defense had not objected to seating African American jurors who were older than the white juror the defense struck for being too old. The court further observed that defense counsel had not requested any additional voir dire of the self-employed juror, which would have addressed counsel’s expressed concern that “self-employed” did not give him sufficient information. Moreover, at least one (African American, older) juror who was seated by the defense had similarly given no information about his prior employment, listing his occupation as simply “retired.”
*575 The court found that defense counsel’s “race-neutral” explanations for striking three of the four challenged jurors were not sufficiently credible to rebut the prima facie case of improper jury strikes presented by the State. The court also noted that while all of the defense peremptories had been exercised against white veniremen, it did find that the defense had rebutted the claim of race-based strikes in one instance, explaining:
For the record the Court is finding that it appears by practice the defense attorney in this case is exercising peremptory challenges based on race. The Court’s articulated that previously hereto there are several challenges that have been made by the defense that the defense was able to give another reason that the Court found it reasonable to exercise a challenge, even though the challenges have uniformly been exercised against white individuals.
The court then seated three of the challenged jurors.
Spencer v. State, No. 493, slip op. at 4-6, 2015 WL 5782927 (Md. Ct. Spec. App. Oct. 2, 2015) (footnote omitted).
The majority of the three-judge panel correctly recognized that the trial judge’s ultimate ruling—that Spencer’s trial counsel had struck three jurors on account of their race—was essentially a fact-based decision. See id. at 4. The majority also correctly recognized that the trial court’s determination necessarily took into account what counsel said about the challenged strikes and appropriately considered counsel’s explanation in light of counsel’s other actions and inactions during voir dire and jury selection. See id. at 4-6.
The majority of the three-judge panel further understood, correctly, that the trial judge also could consider what he knew about trial counsel’s practice in other cases. See id. at 8. The Supreme Court has made clear the legitimacy of such evidence. The Court has noted that, “although some false reasons are shown up within the four corners of a given case, sometimes a court may not be sure unless it looks beyond the case at hand. Hence Batson’s explanation that [the objecting *576 party] may rely on ‘all relevant circumstances’ to raise an inference of purposeful discrimination.” Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (citation omitted).
On the subject of what the trial judge knew about defense counsel’s past practices, the majority of the panel had this to say:
In this case, we must consider the context of the trial judge’s comment about defense counsel’s past practices of the use of race for his peremptory strikes. The court’s first observation about defense counsel’s propensity for seemingly race-based peremptory strikes was not made in the context of defense counsel’s explanations. When the State first presented its Batson challenge, it pointed out the pattern of strikes in this case, and the court responded:
[Counsel], you have been playing with this for a long time in your other trials. The Court has noticed a pattern of striking white mostly male jurors, even jurors who have not answered a question. I’m going to require you to explain your rationale [f]or striking.[1]
Spencer does not, on appeal, contend that the court erred in finding a prima facie case of race-based strikes in this case; as the court noted, in this case, defense counsel only struck white jurors, including those who had not answered any voir dire questions. Critically, the court’s reference to “other trials” was made before Spencer’s attorney was even asked to present the race-neutral reasons for his strikes.
The next reference to prior trials was made after counsel had proffered, and debated at some length, his various explanations, and the court had moved on to the third Batson step, i.e., determining whether the reasons present *577 ed adequately rebutted the apparent case of improper strikes. After discussing the various explanations given by counsel, the court asked if defense counsel “tend[ed] to strike white people when a Defendant is a black person[.]” Defense counsel denied this, and the court then pointed out that in this ease, “every juror you struck has been white[J Every juror you struck on our trial on Monday was white .... The Court’s seen the pattern.”
After some further discussion, the court then stated:
It’s surprising to the Court that if your decision is not color based, as you say, that you have been unable really to articulate any other reason that this Court finds acceptable. You first laid it on age.
[[Image here]]
But the Court doesn’t agree with that being the pattern in this particular case.
(emphasis added).
Spencer, slip op. at 6-8 (alterations in original). The majority of the panel took all of this into account in deciding, in my view, correctly, that the record:
does not support Spencer’s appellate claim that the court’s ruling on the Batson claim “was derived largely on the judge’s experience in previous cases[.]” Indeed, the vast majority of the discussion on the Batson challenge related to the specifics of that particular venire and the particular strikes made in this case. In short, the appellant points us to two references to prior trials out of fifteen pages of transcript. We, therefore, reject the appellant’s claim that the trial judge erred in improperly considering prior trial experiences with defense counsel in determining whether to grant the State’s Batson challenge. In our view, it distorts the record to select these two references out of the record and claim that the only reason the court refused to give defense counsel’s race-neutral explanations more weight was because of prior trials involving defense counsel.
Id. at 8.
I am in full accord, moreover, with my colleagues on the Court of Special Appeals who formed the majority on this *578 issue that it is neither necessary nor reasonable to direct a remand in order to develop a more complete record concerning what, when, and how defense counsel exercised peremptory challenges in other cases. On this subject, Judge Berger wrote for himself and Judge Thieme:
We hold that it is unnecessary that any and all history of inappropriate use of peremptory challenges be objectively verified for clear error. ... It is simply not reasonable for trial courts to expect the parties to present evidence on whether a particular attorney has a practice of striking jurors of a particular race or gender.
Moreover, even if one were able to detail on the record the attorney’s practice of striking certain jurors on the basis of illegitimate reasons, such a practice could lead to a trial-within-a-trial of an attorney’s use of peremptories in previous cases. In our view, this has the potential to cause real problems for the trial courts. Would a court, when presented with a Batson issue involving an attorney’s prior peremp-tories, need to recess in order for the attorneys to gather their notes and allow time for the court to gather the case files from previous trials? All while the prospective jurors are waiting? Further, we have additional reservations about the remedy suggested upon remand.
Critically, credibility determinations and assessments of demeanor lie particularly within the province of the trial judge. ... “[A] reviewing court, analyzing only the transcript of the voir dire, is ‘not as well positioned as the trial court to make credibility determinations,’ ” Berry v. State, 155 Md.App. 144, 163, 843 A.2d 93 (2004) (quoting Miller-El v. Cockrell, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)). As a result, the determination of whether a party’s explanation is pretextual is a finding that we, upon review, accord great deference. See also Edmonds v. State, 372 Md. 314, 331, 812 A.2d 1034 (2002) (“The trial judge’s findings in evaluating a Batson challenge are essentially factual and accorded great deference on appeal”).
Moreover, an appellate challenge to the trial court’s decision to accept or reject the proffered reasons for a peremp *579 tory strike is rarely successful, because “the credibility of the proponent offering the reasons is, as it is generally, for the trial court—not an appellate court—to determine.” See Jeffries v. State, 113 Md.App. 322, 376, 688 A.2d 16 (1997) (“[Ajppellate courts must be highly deferential and will not presume to overturn a trial judge’s findings on [a Batson] issue unless they are clearly erroneous.”). We, therefore, defer to the fact-based credibility determinations of the seasoned trial judge who sustained the State’s challenge under Batson. We, therefore, hold that the circuit court was not clearly erroneous in finding that defense counsel’s reasons for striking the reseated jurors was pretextual. Accordingly, we affirm the judgments of conviction.
Id. at 9-10 (footnote omitted).
I would adopt, in full, the reasoning of the Court of Special Appeals and would hold that the trial judge was not clearly erroneous in finding a Batson violation and seating the jurors whom Petitioner had sought to exclude.

II.

A thought about remedy, generally.

I mentioned at the outset of this opinion that some of the federal courts and our sister state courts have been reacting to Rivera, 556 U.S. at 148, 129 S.Ct. 1446. I take this opportunity to spend a few moments on Rivera, as it speaks directly to the potential remedy for Batson-related errors like the one the majority of my colleagues imagine occurred in the present case.
The Supreme Court granted certiorari in Rivera “to resolve an apparent conflict among state high courts over whether the erroneous denial of a peremptory challenge requires automatic reversal of a defendant’s conviction as a matter of federal law.” 556 U.S. at 156, 129 S.Ct. 1446.[2] The trial judge in *580 Rivera’s case had raised sua sponte a Saiscm-related concern about defense counsel’s use of a peremptory challenge to strike a female juror. Id. at 153, 129 S.Ct. 1446. The judge questioned counsel about counsel’s reasons for the strike, then ruled that the strike was based on the juror’s gender. Id. at 153-54, 129 S.Ct. 1446. As a remedy for counsel’s violation of Batson, the judge seated the juror. Id. at 154, 129 S.Ct. 1446. The Illinois Supreme Court agreed with Rivera that the trial judge erred in finding that-defense counsel purposefully dis *581 criminated against the juror. People v. Rivera, 227 Ill.2d 1, 316 Ill.Dec. 488, 879 N.E.2d 876, 884 (2007). The state supreme court then examined the trial record and found no indication that Rivera had been “tried before a biased jury, or even one biased juror.” See id. 316 Ill.Dec. 488, 879 N.E.2d at 885-87 (emphasis in original). The state supreme court therefore held that the denial of Rivera’s peremptory challenge did not constitute structural error requiring automatic reversal. Id. 316 Ill.Dec. 488, 879 N.E.2d at 887.
The United States Supreme Court affirmed the decision of the Illinois Supreme Court, agreeing with that court that the trial judge’s error did not qualify as “structural error”; rather, Rivera was “tried before a qualified jury composed of individuals not challengeable for cause.” Rivera, 556 U.S. at 157, 129 S.Ct. 1446. Justice Ginsburg, writing for the unanimous Court, restated the longstanding principle that there is no federal constitutional right to peremptory challenges, although States may provide for such challenges by statute. Id.; see also U.S. v. Martinez-Salazar, 528 U.S. 304, 311, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000); Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (“We have long recognized that peremptory challenges are not of constitutional dimension.”). Consequently, “the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution,” Rivera, 556 U.S. at 158, 129 S.Ct. 1446. Although one’s fundamental right to a trial by an impartial jury must be secured, that right is secured by use of challenges for cause. See id. at 158-59, 129 S.Ct. 1446.
The Rivera Court concluded that, because the challenged, but ultimately seated, juror was not subject to removal for cause, “Rivera’s jury was impartial for Sixth Amendment purposes.” Id. at 159, 129 S.Ct. 1446. The Court, moreover, rejected Rivera’s argument that the erroneous denial of a criminal defendant’s challenge violates the Due Process Clause of the Fourteenth Amendment or other federal law. Id. at 159-61, 129 S.Ct. 1446. The Court distinguished the cases cited by Rivera that involve constitutional errors relating to, among other issues, the qualification of the judge or jury, *582 including Batson itself. Rivera, 556 U.S. at 161, 129 S.Ct. 1446. It is notable that, unlike Rivera’s case, Batson involved the unlawful exclusion of jurors from the jury. See Rivera, 556 U.S. at 161, 129 S.Ct. 1446 (citing Batson, 476 U.S. at 86-87, 106 S.Ct. 1712).
Notwithstanding its rejection of Rivera’s federal constitutional claims, the Rivera Court emphasized:
States are free to decide, as a matter of state law, that a trial court’s mistaken denial of a peremptory challenge is reversible error per se. Or they may conclude, as the Supreme Court of Illinois implicitly did here, that the improper seating of a competent and unbiased juror does not convert the jury into an ultra vires tribunal; therefore the error could rank as harmless under state law.
Id. at 162, 129 S.Ct. 1446.
This Court considered a substantially similar set of facts in Parker v. State, 365 Md. 299, 311, 778 A.2d 1096 (2001), and concluded that a defendant was entitled to a new trial following the trial judge’s erroneous denial of defense peremptory challenges. As in the present case, the Court in Parker was not asked to consider whether, as a result of the trial judge’s error, Parker was entitled automatically to a new trial, or instead whether a harmless error analysis determines entitlement to such relief. In light of Rivera and the federal and state high court decisions that have issued in its wake, this Court should settle the question as a matter of Maryland law. This case, however, is not the one in which to do that, as neither party has even touched this issue, much less presented to this Court a properly preserved argument on the issue.

. The trial judge in this case has been a judge of the Circuit Court for Dorchester County since June 2004. That circuit court was until March 2014 a one-judge court, and, even now, a second circuit court judge generally hears cases for only two weeks each month. Defense counsel in this case appears to be one of a very small cohort of those who serve as public defenders on the Lower Eastern Shore.

. In addition to the Illinois case before it, the Rivera Court cited several other state supreme court cases on both sides of the divide. See 556 U.S. at 156, 129 S.Ct. 1446 (citing People v. Bell, 473 Mich. 275, 702 N.W.2d *580 128, 138-41 (2005); Angus v. State, 695 N.W.2d 109, 118 (Minn. 2005); State v. Vreen, 143 Wash.2d 923, 26 P.3d 236, 238-40 (2001) (en banc)).
There remains a split among the state courts as to the proper remedy following the erroneous denial of a defendant’s peremptory challenge. Compare, e.g., State v. Mootz, 808 N.W.2d 207, 225 (Iowa 2012) (holding that a presumption of prejudicial error follows an erroneous denial of a defendant’s peremptory challenge, thereby mandating a reversal of the defendant’s conviction); Commonwealth v. Hampton, 457 Mass. 152, 928 N.E.2d 917, 927 (2010) ("We continue to adhere to the view that, for purposes of State law, the erroneous denial of a peremptory challenge requires automatic reversal, without a showing of prejudice."); State v. Campbell, 772 N.W.2d 858, 862 (Minn. Ct. App. 2009) (concluding that the State law "requirement of automatic reversal survives Rivera"); People v. Hecker, 15 N.Y.3d 625, 917 N.Y.S.2d 39, 942 N.E.2d 248, 271-72 (2010) (concluding that a mistaken denial of a peremptory challenge "mandates automatic reversal") with, e.g., People v. Novotny, 320 P.3d 1194, 1202 (Colo. 2014) ("While we do not imply today that every violation of our statutes and rules prescribing the use of peremptory challenges must be disregarded as harmless, we are nevertheless unwilling to conclude that such violations ... rise to the level of structural error,”); State v. Lewis, 112 So.3d 796, 804 (La. 2013) (“[W]e find the harmless-error analysis ... remains the appropriate standard for review of a district court ruling prohibiting a defendant from using a peremptory challenge,’’); Robinson v. State, 255 P.3d 425, 430 (Okla. Crim. App. 2011) (overruling state law precedent mandating automatic reversal following an erroneous denial of a defendant’s peremptory challenge in favor of a harmless error analysis).
All federal circuit courts that have considered the issue post-Rivera have rejected a rule of automatic reversal. See, e.g., U.S. v. Bowles, 751 F.3d 35, 39 (1st Cir. 2014) ("Every one of our sister circuits to have considered the question has similarly held that, under Rivera, error in sustaining a Batson challenge is subject to harmless error analysis.”); U.S. v. Williams, 731 F.3d 1222, 1236 (11th Cir. 2013) ("We thus apply harmless error review to any misapplication of Batson that results in the seating of a juror who is otherwise qualified for juror service,”); U.S. v. Lindsey, 634 F.3d 541, 544 (9th Cir. 2011) ("[W]e reject [the] automatic reversal rule and review the denial of [defendant's] peremptory challenge under a more deferential standard of review.”).